# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DANIEL A. GROVER, | DOCKET NUMBER |
| Appellant, | CH-0831-13-2586-B-1 |
| v. | |
| OFFICE OF PERSONNEL MANAGEMENT, | DATE: April 10, 2015 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Norman Jackman, Esquire, Cambridge, Massachusetts, for the appellant.

Karla W. Yeakle, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1  The appellant has filed a petition for review of the remand initial decision, which affirmed the initial decision of the Office of Personnel Management (OPM) regarding the calculation of his retirement annuity.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the remand initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2        The appellant is a former Customs Officer who retired from the Department of Homeland Security, Customs and Border Protection, on August 2, 2008. Remand Appeal File (RAF), Tab 6 at 3. For retirement purposes, he was covered under the Civil Service Retirement System (CSRS), though because of a break in service after December 31, 1986, he was under the CSRS Offset plan. *Id.* at 3-4. Additionally, he participated in "premium conversion," wherein he paid his share of health insurance premiums using pre-tax dollars, reducing the amount of his income that would count for retirement purposes. *See id.* at 4; RAF, Tab 20 at 7. As a Customs Officer, inclusion of overtime in his retirement deductions was subject to the limitations set forth in the Customs Officers' Pay Reform Act of 1993 (COPRA), Pub. L. No. 103-66, § 13812, 107 Stat. 317, 670 (Aug. 10, 1993).

¶3        The appellant's retirement annuity was calculated pursuant to the provisions of 5 U.S.C. § 8339(a). A basic element of that computation is "average pay," which is the largest annual rate resulting from averaging an annuitant's rates of basic pay in effect over any 3 consecutive years of creditable service. *See* 5 U.S.C. § 8331(4).

¶4    OPM has recalculated the appellant's annuity several times since his retirement in order to correct multiple errors. When he retired, the National Finance Center (NFC) prepared and certified his Individual Retirement Record (IRR), Standard Form 2806.[2] RAF, Tab 6 at 3; *see id.*, Attachment (Att.) 1. OPM determined his high-three average pay to be $83,164. RAF, Tab 6 at 5; *see id.*, Att. 3. OPM subsequently found this calculation to be incorrect because it did not accurately reflect his salary for 2008, *compare id.*, Att. 3, *with* Att. 5, and recomputed his average pay to be $88,450, RAF, Tab 6 at 5; *see id.*, Att. 5. This calculation was also erroneous, as OPM applied the wrong conversion factor for some of his earnings for 2008, artificially inflating his pay.[3] *See* RAF, Tab 6 at 5.

¶5    The appellant continued to allege that his average pay calculations were wrong, and on September 18, 2009, OPM issued a final decision determining his annuity, which he appealed to the Board. Initial Appeal File (IAF), Tab 1, Exhibit (Ex.) 3. While the appeal was in process, OPM rescinded the final decision. *Id.* The administrative judge thus dismissed the appeal for a lack of jurisdiction. *Grover v. Office of Personnel Management*, MSPB Docket No. CH-0831-10-0006-I-1, Initial Decision (Nov. 10, 2009).

¶6    The appellant filed a second Board appeal on March 29, 2011. *Grover v. Office of Personnel Management*, MSPB Docket No. CH-0831-11-0458-I-1, Initial Decision at 1 (Dec. 9, 2011) (hereinafter *Grover II*). On the same day, the NFC certified a corrected breakdown of the appellant's premium conversion retirement deductions. *See* RAF, Tab 6, Att. 7. OPM issued an initial decision on September 20, 2011, recalculating the appellant's annuity based on a new average

---

[2] The initial IRRs from NFC did not contain information about the appellant's retirement deductions under premium conversion; they were corrected on November 17, 2008. RAF, Tab 6 at 5, Tab 20 at 7; *see* RAF, Tab 6, Attachment (Att.) 2.

[3] OPM bases average pay on retirement deductions as reflected on the IRR. RAF, Tab 6 at 4-5; *see, e.g.*, *id.*, Atts. 4, 6.

pay of $90,542. *Grover II* at 2; RAF, Tab 6 at 5; *see id.*, Att. 8. The administrative judge dismissed the appeal for lack of jurisdiction on December 9, 2011, because OPM had not yet issued the reconsideration decision requested by the appellant. *Grover II* at 2.

¶7 OPM rescinded its September 20, 2011 initial decision on September 10, 2012, again finding the appellant's annuity had been improperly calculated. *See* IAF, Tab 1 at 11. OPM explained that its computation was inconsistent with COPRA and advised the appellant that he would be issued a new initial decision with reconsideration rights. *Id.* On May 31, 2013, the appellant asked OPM to issue a decision. *Id.* at 12. After failing to receive a response from OPM, he filed the instant appeal on August 19, 2013. IAF, Tab 1. On October 2, 2013, OPM issued an initial decision recalculating his average pay as $88,964. IAF, Tab 13 at 5-6, 9; RAF, Tab 6 at 6; *see id.*, Atts. 10-11. The appellant did not request reconsideration of that decision, and the administrative judge dismissed the appeal for lack of jurisdiction on December 2, 2013. IAF, Tab 17 at 4. On review, we found OPM's October 2, 2013 initial decision to be tantamount to a final decision and remanded the matter to the regional office for adjudication on the merits. *See Grover v. Office of Personnel Management*, MSPB Docket No. CH-0831-13-2586-I-1, Remand Order at 4 (Mar. 7, 2014).

¶8 While the appeal was pending on remand, OPM issued an April 3, 2014 letter explaining why its October 2, 2013 initial decision was correct. RAF, Tab 6 at 3-7. The administrative judge granted the appellant's motion to compel discovery,[4] *see* RAF, Tabs 5, 7, and he received approximately 1500 pages of documents in connection with his request, RAF, Tab 9 at 4. He did not, however, file any new information with the administrative judge correcting or

---

[4] The administrative judge specifically required OPM to provide "[a]ll such documents that are related in any way to the determination of the amount of Appellant's annuity, including, but not limited to, the entire file on Appellant maintained at Boyers, Pennsylvania, whether in hard copy or stored in computers." RAF, Tab 5 at 5.

supplementing the data shown on his IRR. The administrative judge thus issued an initial decision affirming OPM's October 2, 2013 initial decision. RAF, Tab 22, Initial Decision (ID) at 2, 8. The appeal is again before the Board on review. Remand Petition for Review (RPFR) File, Tab 1.

¶9 The appellant contends that the appeal was incorrectly decided. He argued before the administrative judge and now asserts that, pursuant to 19 C.F.R. § 24.16(b)(13), his high-three average pay should include $17,500 in overtime pay (representing the statutory cap for such pay).[5] *See* RAF, Tabs 15, 17. He argues that, based on his pay stubs for the years 2005 through 2008, his high-three average pay should be $106,278.57. *See* RPFR File, Tab 1 at 5; *see also* RAF, Tab 15, Ex. 2. OPM averred and continues to assert that the October 2, 2013 computation to determine average pay was correct and included all allowable overtime pay. *See* RAF, Tab 12 at 1-2, Tab 16 at 4-5, Tab 20 at 5-8; RPFR File, Tab 4.

¶10 OPM's calculations are correct based on the IRRs that NFC submitted. Because he was under CSRS Offset, OPM was required to reduce the appellant's CSRS annuity pursuant to Title II of the Social Security Act.[6] 5 U.S.C. § 8349(a)(1); 5 C.F.R. § 831.1005. To compensate for the reduced annuity, his

---

[5] COPRA capped the overtime and premium pay that any customs officer could receive during a fiscal year. *See* COPRA § 13811(a) (codified at 19 U.S.C. § 267(c)(1)). For fiscal year 2005, the cap was raised to $35,000. Department of Homeland Security Appropriations Bill, 2005, Pub. L. No. 108-334, 118 Stat. 1298 (Oct. 18, 2004). Overtime for purposes of calculating "basic pay" under CSRS cannot "exceed 50 percent of any statutory maximum in overtime pay for customs officers which is in effect for the year involved." 5 U.S.C. § 8331(3)(G).

[6] Federal employees who became subject to CSRS on or after January 1, 1984, are subject to mandatory Social Security coverage under the Social Security Amendments of 1983, Pub. L. No. 98-21, § 101, 97 Stat. 65, 70 (Apr. 20, 1983) (codified at 42 U.S.C. § 410(a)(5)). Because the appellant separated from employment for more than a year between November 30, 1986, and December 12, 1988, he was placed in the CSRS Offset plan and had to pay Social Security taxes plus a reduced retirement deduction to the CSRS fund. RAF, Tab 20 at 7; *see* 42 U.S.C. § 410(a)(5)(B)(i)(I); 5 U.S.C. § 8349.

retirement deductions were taken at a lower rate after he returned to service on December 12, 1988. RAF, Tab 6 at 4. The appellant was also under premium conversion starting in 2003 and used pre-tax dollars to pay his health insurance premiums. Pre-tax dollars, however, are subject to the full CSRS retirement deductions rather than the lesser CSRS Offset deductions. *Id.* Thus, the appellant's IRR shows two separate line items representing retirement deductions for 2003 and each year thereafter. One line item represents the reduced CSRS deductions, taken at .80 percent (1.3% effective July 6, 2008), and the other represents regular deductions of 7.0 percent (7.5% effective July 6, 2008). *Id.*; *see id.*, Att. 2. As with all Customs employees under COPRA, OPM computed the appellant's high-three average pay based on a formula that incorporates retirement deductions rather than actual earnings.[7] RAF, Tab 6 at 4-5, Tab 20 at 7-8; *see* RAF, Tab 6, Att. 11.

¶11 The appellant asserts, as he did before the administrative judge, that OPM failed to include in its calculation all of the overtime to which he was entitled. It is undisputed that certain overtime pay for customs officers is considered basic pay for retirement purposes. 19 C.F.R. § 24.16(b)(13) ("Overtime pay, within the limits prescribed by the Act, is includable for Federal retirement benefit purposes."). Because retirement deductions are withheld as a percentage of basic pay, they would have necessarily included all allowable overtime pay. We also note that the appellant's certified IRR states that overtime pay up to the statutory maximums was included in his retirement deductions. *See* RAF, Tab 6, Att. 2.

¶12 Payments of money from the civil service retirement fund are limited to those authorized by statute. *See Office of Personnel Management v.*

---

[7] OPM explained that, under COPRA, average salary is based on retirement deductions converted to earnings. RAF, Tab 6 at 4. Indeed, only pay subject to retirement deductions may be used to compute average pay for retirement purposes. RAF, Tab 20 at 7. Using these retirement deductions rather than actual earnings to compute average pay allows OPM to readily account for any additional pay beyond base pay that is subject to retirement deductions. *See id.* at 8.

*Richmond*, 496 U.S. 414, 416, 434 (1990). Neither the Board nor OPM has discretion to change the eligibility requirements for any retirement benefit. *See Allen v. Office of Personnel Management*, 77 M.S.P.R. 212, 216 (1998). Although it is unfortunate that the appellant had to endure multiple recalculations of his annuity, he nevertheless failed to meet his burden to prove that OPM's final calculations were erroneous and that he is entitled to a larger annuity. *See Sanderson v. Office of Personnel Management*, 72 M.S.P.R. 311, 317 (1996) (it is well settled that an appellant bears the burden of proving by preponderant evidence his entitlement to a civil service retirement annuity), *aff'd*, 129 F.3d 134 (Fed. Cir. 1997) (Table); 5 C.F.R. § 1201.56(a)(2). Accordingly, we affirm the remand initial decision.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff.

Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
William D. Spencer
Clerk of the Board

Washington, D.C.